**T. Lane SCOTT, Appellant,**

v.

**Newton GALUSHA, Dixon Presnall, Barry Alldredge, Jonathan Richard, Gary Jones, Scott Hall, and Robert Sewell, Appellees.**

**No. 2–93–237–CV.**

Court of Appeals of Texas, Fort Worth.

Dec. 30, 1994.

Rehearing Overruled Jan. 31, 1995.

---

1. The record contains both oral and written ad- monishments.

Patricia K. White, Fort Worth, for appellant,

T. Lane Scott, pro se.

Thompson & Knight and Timothy R. McCormick, Cheryl E. Diaz, Dallas, Riordan & McKinzie and Martin J. Thompson, Los Angeles, CA, for appellees.

Before HILL, C.J., and FARRIS and HICKS, JJ.

## OPINION

HILL, Chief Justice.

Dr. T. Lane Scott, M.D., appeals from a summary judgment that he take nothing in his claims against the appellees, who are also physicians. Scott had staff privileges at Harris Methodist HEB Hospital along with the appellees. He contends in his first five points of error that the court erred in granting the appellees' motion for summary judgment. Scott contends in a sixth point of error that the court erred in signing a judgment which allowed the appellees to nonsuit their claims for bad faith litigation and TEX. R.CIV.P. 13 sanctions because this judgment did not conform to the pleadings or to the ruling of the court.

We affirm because: (1) Scott lacked standing to bring an antitrust action; (2) Scott voluntarily and affirmatively waived his appeal of the summary judgment as to two causes of action; (3) the appellees disproved an essential element of the claim for tortious interference; (4) Scott failed to preserve any error in the court's discovery ruling; and (5) the court properly allowed appellees to nonsuit their counterclaims against Scott.

### Factual Background

Scott brought an action against several other doctors who served with him on the staff of Harris HEB. He alleges that a meeting was held in early 1987 at which the physicians were encouraged to join the Harris HEB Health Maintenance Organization ("H.M.O."). Scott further alleges that price fixing and exclusion of competition were discussed at the meeting. Scott claims to have voiced objections to participating in the H.M.O. He claims that, because of his opposition to the H.M.O., over the next four years the appellees conspired in a campaign to drive him off the staff of Harris HEB through false complaints of deficient practices and the systematic neglect and mistreatment of his patients. Scott left Harris HEB on March 27, 1991.

### Procedural History

Scott filed this suit on June 20, 1991. Scott alleged eight claims against the appel-

lees. The first is a cause of action against the appellees for restraint of trade per se, alleging that by using the H.M.O. to set maximum allowable fees to be charged by participating physicians the appellees have violated the Sherman Antitrust Act and the Texas Free Enterprise and Antitrust Act. The second cause of action alleged that the appellees' conduct involved a combination or conspiracy by a group of physicians acting in concert to restrain trade in violation of section 15.05(a) of the Texas Free Enterprise and Antitrust Act of 1983. TEX.BUS. & COM. CODE ANN. § 15.05(a) (Vernon 1987). The third cause of action alleged that the appellees' conduct involved an attempt to monopolize the market in violation of section 15.05(b) of the Texas Free Enterprise and Antitrust Act. The fourth cause of action alleged a conspiracy to fix prices in violation of section 15.05(c) of the Texas Free Enterprise and Antitrust Act. The fifth cause of action alleged that the appellees' conduct interfered with the continuation of Scott's lawful profession. The sixth, seventh, and eighth causes of action alleged respectively that the appellees' conduct constituted defamation, tortious interference with business relations, and intentional infliction of emotional distress.

The appellees counterclaimed, seeking damages for bad faith litigation and rule 13 sanctions. *See* TEX.R.CIV.P. 13.

Following discovery appellees moved for summary judgment on numerous grounds. In addition to arguing that all of Scott's allegations had no basis in fact, the appellees argued contractual immunity to suit based on the staff contract that Scott signed with the hospital. The appellees also moved for summary judgment based upon limitations, lack of standing, and privilege. Grounds specific to each cause of action were raised. The appellees sought a summary judgment in favor of their counterclaims for bad faith litigation and rule 13 sanctions.

In his response to the motion for summary judgment, Scott relied solely on the presence of material questions of fact to resist the summary judgment as to all of the causes of action. In his brief in support of the response, he also addressed the affirmative defense of limitations.

The trial judge indicated that the motion for summary judgment granting damages for bad faith litigation and rule 13 sanctions would be denied. The appellees then nonsuited these claims and proceeded to a final judgment on their motion for summary judgment.

█ When reviewing a summary judgment granted on general grounds, the court considers whether any theories set forth in the motion will support the summary judgment. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993). When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made. *Bailey v. Rogers,* 631 S.W.2d 784, 786 (Tex. App.—Austin 1982, no writ); *Hudson v. Buddie's Super Markets, Inc.,* 488 S.W.2d 143, 147–48 (Tex.Civ.App.—Fort Worth 1972, no writ). In order to assign error to a ground supporting the motion for summary judgment, the nonmovant must present the ground to the trial court in opposition to the motion for summary judgment. *State Bd. of Ins. v. Westland Film Indus.,* 705 S.W.2d 695, 696 (Tex.1986).

In his pro se reply brief, Scott affirmatively waived his appeal of the summary judgment against his causes of action based on defamation and intentional infliction of emotional distress.

### Point of error six

█ In his sixth point of error, Scott alleges the court erred in allowing the appellees to nonsuit their counterclaims after the court indicated it would not grant a summary judgment awarding recovery on these claims. If this point of error is sustained and the judgment does not dispose of the counterclaims, we lack jurisdiction to hear what would be an interlocutory appeal. *Teer v.*

*Duddlesten*, 664 S.W.2d 702, 703 (Tex.1984) (op. on reh'g). Thus, we will address it first.

■ A party may voluntarily dismiss his claims at any time prior to the presentation of his evidence. Tex.R.Civ.P. 162. This right to nonsuit is absolute and unqualified. *McQuillen v. Hughes*, 626 S.W.2d 495, 496 (Tex.1981); *Strawder v. Thomas*, 846 S.W.2d 51, 59 (Tex.App.—Corpus Christi 1992, no writ) (op. on reh'g). Scott cites no authority challenging this proposition.[1]

■ The court did not err in allowing the appellees to nonsuit their claims. To the extent that Scott is complaining of any defect in the form of the judgment, he waived this error by failing to raise it in his motion for new trial or in a motion to modify, correct, or reform the judgment. *See Willis v. Willis*, 826 S.W.2d 700, 702 (Tex.App.—Houston [14th Dist.] 1992, no writ). Point of error six is overruled.

### Point of error four

■ In his fourth point of error Scott argues the trial court erred in denying him access to his peer review file. While Scott presents a compelling argument for access to the file, he failed to request that the peer review file be carried forward under seal with the appellate record. Therefore, he failed to present a sufficient record to this court for review of the trial court's ruling. *Pope v. Stephenson*, 787 S.W.2d 953, 954 (Tex.1990).

Without this record, the question of whether Scott preserved error is moot. Likewise, without the documents, it is impossible to determine if the trial court abused its discretion in ruling that the documents contained in the peer review file were protected by the statutory privilege. *See* Tex.Rev.Civ.Stat. Ann. art. 4495b, § 5.06 (Vernon Supp.Pamph. 1994).

We overrule the fourth point of error.

### Points of error one, two, three, and five

Because these four points of error apply in whole or in part to some or all of the causes of action, we will address the causes of action. The points of error will be addressed as applicable to each cause of action.

### First Five Causes of Action

The first five causes of action seek damages against appellees for numerous antitrust violations, alleging that by using the H.M.O. to set maximum allowable fees to be charged by participating physicians the appellees violated the Sherman Antitrust Act and the Texas Free Enterprise and Antitrust Act. The appellees based the motion for summary judgment on five independent grounds: (1) any antitrust claims were contractually released; (2) Scott lacked standing to assert any antitrust claims; (3) there is no evidence of agreement or conspiracy and conclusive evidence shows there was no agreement or conspiracy; (4) the appellees possess a statutory immunity from suit; and (5) the claims are barred by the statute of limitations. In his response to the motion for summary judgment Scott addressed the third and fifth grounds, arguing that there were material fact questions precluding summary judgment on these grounds.

■ Scott may not raise a challenge to the other three grounds for the first time on appeal. *Westland Film Indus.*, 705 S.W.2d at 696. While the nonmovant need not file an answer or response to the summary judgment motion, on appeal he may only contend that the movant's motion was insufficient as a matter of law. *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex.1986); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of movant's cause of action or defense as a

---

1. Scott does cite to *Antil v. Southwest Envelope Co.*, 601 S.W.2d 47 (Tex.Civ.App.—Beaumont 1979, no writ) for the proposition that "[o]nce the court announces its decision on the motion for summary judgment, however, the plaintiff cannot take a non-suit." This sentence does not appear in the *Antil* opinion, nor does the *Antil* opinion address this question.

matter of law. *City of Houston,* 589 S.W.2d at 678. The trial court's judgment will be affirmed if it rests upon independent grounds to which no point of error was assigned. *Bailey,* 631 S.W.2d at 786. After carefully reviewing the record, we conclude that one theory which supports the trial court's judgment is that Scott lacked standing to pursue the antitrust claims.

Scott brought one of his allegations under the Sherman Act, and all of them under the Texas Free Enterprise and Antitrust Act. *See* Tex.Bus. & Com.Code Ann. § 15.01. We are required to construe the Texas Free Enterprise and Antitrust Act in harmony with federal judicial interpretations of comparable federal antitrust statutes. *See id.* § 15.04.

 Federal antitrust law imposes a threshold standing requirement upon persons seeking liability for antitrust violations. *See Bowen v. Wohl Shoe Co.,* 389 F.Supp. 572, 578 (S.D.Tex.1975). There is a two-pronged test to examine whether a plaintiff has proper antitrust standing. *See Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1448 (11th Cir.1991). A court should first determine whether the plaintiff suffered an antitrust injury, and second the court should determine whether the plaintiff is an efficient enforcer of the antitrust laws, which requires analysis of the directness or remoteness of the plaintiff's injury. *Id.* at 1449.

 Scott did not suffer an antitrust injury. Antitrust laws are designed to protect competition rather than individual competitors. Tex.Bus. & Com.Code Ann. § 15.04; *Oksanen v. Page Memorial Hosp.,* 945 F.2d 696, 709 (4th Cir.1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 973, 117 L.Ed.2d 137 (1992). It is a well-established rule that a plaintiff does not have antitrust standing to prosecute an economic injury to himself unless that injury corresponds to an injury of the same type to the relevant market. *Anago, Inc. v. Tecnol Medical Prod., Inc.,* 976 F.2d 248, 249 (5th Cir.1992), *cert. dism'd,* —— U.S. ——, 114 S.Ct. 491, 126 L.Ed.2d 441 (1993).

Federal courts have frequently granted summary judgments to defendants based on lack of antitrust standing where a plaintiff physician complains of an alleged antitrust conspiracy to exclude him from a medical staff. *See, e.g., Miller v. Indiana Hosp.,* 814 F.Supp. 1254, 1265 (W.D.Pa.) (Plaintiff must show impact on competition emanating from unreasonable restraints.), *aff'd,* 975 F.2d 1550 (3rd Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1366, 122 L.Ed.2d 744 (1993); *Lie v. St. Joseph Hosp.,* 964 F.2d 567, 570 (6th Cir.1992) (Mere fact income of individual doctor has decreased does not suggest an injury to competition); *Mandava v. Howard County General Hosp., Inc.,* 1992–2 Trade Cas. (CCH) ¶ 69,932 (D.Md.1992) (No antitrust violation to exclude physician from a hospital if physician may work at another hospital in market area.). Scott has failed to provide any case law distinguishing the facts of his case from the facts in the federal cases.

Scott raises two arguments addressing standing for the first time on appeal. In the first, he argues that these rules do not apply because a per se violation of the antitrust law occurred. The United States Supreme Court held that proof of a per se violation and of antitrust injury are distinct matters that must be shown independently. *See Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 344, 110 S.Ct. 1884, 1894, 109 L.Ed.2d 333, 350 (1990). In the second, he argues that he is merely using the alleged violations of the statute as an evidentiary basis to support his right to recover in equity for the damage the violations caused his business. This is a redefining of the antitrust causes of action as a form of tortious interference and we will address tortious interference under cause of action seven below.

We overrule point of error numbers one, two, three, and five as they apply to the first five causes of action.

### Sixth Cause of Action

The sixth cause of action alleges that the appellees' conduct constituted defamation. In his reply brief Scott voluntarily and affir-

matively waived any error in the summary judgment disposing of this cause of action.

We affirm the court's judgment as to the sixth cause of action. We overrule point of error one as it relates to the sixth cause of action.

### Seventh Cause of Action

The seventh cause of action alleges that the appellees' conduct constituted tortious interference with business activities. The appellees based the motion for summary judgment on five independent grounds: (1) any claims of tortious interference were contractually released; (2) the conduct complained of was privileged under Texas law; (3) there is no evidence of interference in Scott's business activities and conclusive evidence of no actionable interference; (4) the appellees possess a statutory immunity from suit; and (5) the claims are barred by the statute of limitations. In his response to the motion for summary judgment, Scott addressed the third and fifth grounds, arguing that there are material fact questions precluding summary judgment on these grounds.

Scott may not raise a challenge to the other three grounds for the first time on appeal. *Westland Film Indus.*, 705 S.W.2d at 696. These three grounds independently support the judgment of the court. The trial court's judgment may be affirmed because it rests upon independent grounds to which no point of error was assigned. *Bailey*, 631 S.W.2d at 786. After carefully reviewing the record, we conclude that one theory which supports the trial court's judgment is because no tortious interference occurred as a matter of law.

■ An essential element of a claim for tortious interference is that the defendant's conduct caused actual damage and loss to the plaintiff's business. *CF & I Steel Corp. v. Pete Sublett & Co.*, 623 S.W.2d 709, 713 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Scott admitted that the challenged conduct of the physicians caused no harm to his business. The appellees disproved an essential element of Scott's claim for tortious interference.

We overrule points of error one and five as related to the seventh cause of action.

### Eighth Cause of Action

The eighth cause of action alleged the appellees' conduct constituted intentional infliction of emotional distress. In his reply brief Scott voluntarily and affirmatively waived any error in the summary judgment disposing of this cause of action.

We affirm the court's judgment as to the eighth cause of action. We overrule point of error one as it relates to the eighth cause of action.

### Conclusion

We overrule the six points of error. We affirm the court's judgment on all eight of the causes of action.